# In the United States Court of Appeals for the Fifth Circuit

IN THE MATTER OF HIGHLAND CAPITAL MANAGEMENT, L.P., *Debtor*,

CHARITABLE DAF FUND, L.P.; CLO HOLDCO, LIMITED, *Appellants*,

v.

HIGHLAND CAPITAL MANAGEMENT, L.P., *Appellee.*

On Appeal from the United States District Court for the Northern District of Texas, Dallas Division Case No. 3:23-CV-1503

## APPELLANTS' REPLY BRIEF

Mazin A. Sbaiti
Jonathan Bridges
Griffin S. Rubin
SBAITI & COMPANY PLLC
Dallas Arts Tower
2200 Ross Avenue, Suite 4900W
Dallas, Texas 75201
(214) 432-2899
mas@sbaitilaw.com

*Counsel for Appellants*
*Charitable DAF Fund, L.P. and CLO Holdco, Ltd.*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................ 1

ARGUMENT .............................................................................. 2

   I. Appellants State Claims Upon Which Relief Can Be Granted.......... 2

     a. Breach of Fiduciary Duty............................................................ 2

        i.    The Rule 10b-5 Claim Is a Red Herring ............................ 3

        ii.   Rule 9(b) Is Inapplicable But is Nevertheless Satisfied ...... 4

        iii.  Appellants Have Pleaded a Claim Under the IAA.............. 5

        iv.  The Claim Belongs to Both the DAF and Holdco................ 7

        v.   The *NexPoint* Case Cuts Against Highland ........................ 9

        vi.  Remedies Are Available Under § 215 ................................ 11

        vii. The Judicial-Estoppel Argument Does Not Reach the Fiduciary-Duty Claims ...................................................... 13

        viii. That the Sale Occurred in the Context of the Settlement Is Immaterial .................................................. 13

     b. Gross Negligence ........................................................................ 14

     c. Judicial Estoppel........................................................................ 16

     d. Contract-Related Claims............................................................ 18

   II. Appellants Should Have an Opportunity to Amend........................ 19

CONCLUSION............................................................................ 22

CERTIFICATE OF SERVICE .................................................. 23

CERTIFICATE OF COMPLIANCE ......................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

## <u>Cases</u>

*Avion Funding, L.L.C. v. GFS Indus., L.L.C.*
*(In re GFS Indus., L.L.C.),*
 99 F.4th 223, 229 (5th Cir. 2024)................................................. 10-11

*Boudreaux v. La. State Bar Ass'n,*
 3 F.4th 748 (5th Cir. 2021) ............................................................. 15

*CLO Holdco, Ltd. v. Kirschner,*
 102 F.4th 286 (5th Cir. 2024) ......................................................... 20

*CSX Transp., Inc. v. Ala. Dep't of Revenue.,*
 888 F.3d 1163 (11th Cir. 2018) ................................................. 16-17

*D.A. v. Hous. Indep. Sch. Dist.,*
 629 F.3d 450 (5th Cir. 2010) ........................................................... 17

*Foman v. Davis,*
 371 U.S. 178 (1962)................................................................... 21-22

*Gilchrist v. Westcott (In re Gilchrist),*
 891 F.2d 559 (5th Cir. 1990)........................................................... 15

*Goldstein v. SEC,*
 451 F.3d 873 (D.C. Cir. 2006) ...................................................... 7-8

*Gupta v. E. Idaho Tumor Inst., Inc.,*
 394 F.3d 347 (5th Cir. 2004) ........................................................ 6-7

*Laird v. Integrated Res., Inc.,*
 897 F.2d 826 (5th Cir. 1990) ................................................. 7, 9-10

*Life Partners Creditors' Tr. v. Cowley*
*(In re Life Partners Holdings, Inc.)*,
    926 F.3d 103 (5th Cir. 2019) ............................................................ 5

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970) ...................................................................... 12

*Moody v. Empire Life Ins. Co. (In re Moody)*,
    849 F.2d 902 (5th Cir. 1988) .......................................................... 15

*Mullen v. Jones*,
    445 B.R. 677 (Bankr. N.D. Tex. 2011) .............................................. 4

*Nexpoint Advisors, L.P. v. Highland Cap. Mgmt., L.P.*
*(In re Highland Cap. Mgmt., L.P.)*,
    48 F.4th 419 (5th Cir. 2022) .......................................................... 16

*NexPoint Diversified Real Estate Trust v. Acis Capital*
*Management, L.P.*,
    80 F.4th 413 (2d Cir. 2023) ...................................................... 9, 11

*Oxford Cap. Corp. v. United States*,
    211 F.3d 280 (5th Cir. 2000) .......................................................... 18

*Pugliese v. Pukka Dev., Inc.*,
    550 F.3d 1299 (11th Cir. 2008) ...................................................... 18

*Reg'l Props., Inc. v. Fin. & Real Estate Consulting Co.*,
    678 F.2d 552 (5th Cir. 1982) .................................................... 11, 12

*SEC v. Markusen*,
    143 F. Supp. 3d 877 (D. Minn. 2015) ............................................ 8-9

*Sec'y, U.S. Dep't of Lab. v. Preston*,
    873 F.3d 877 (11th Cir. 2017) .................................................. 18-19

*Servicios Azucareros de Venez., C.A. v. John Deere Thibodeaux, Inc.,*
    702 F.3d 794 (5th Cir. 2012) ........................................................ 15

*Superior Crewboats, Inc. v. Primary P & I Underwriters*
*(In re Superior Crewboats, Inc.),*
    374 F.3d 330 (5th Cir. 2004) ........................................................ 16

*Transamerica Mortg. Advisors (TAMA) v. Lewis,*
    444 U.S. 11 (1979) ...................................................................... 12

*Weingarten Realty Invs. v. Miller,*
    No. 11-CV-2522, 2012 U.S. Dist. LEXIS 99958
    (S.D. Tex. July 18, 2012) ............................................................ 14

*Wills v. Donnelly,*
    118 S.W.3d 10 (Tex. App.—Houston [14th Dist.] 2003, no pet.).... 4-5

## Statutes

15 U.S.C. § 80b-15............................................................................ 11-12

15 U.S.C. § 80b-15(b) ...................................................................... 6, 10, 12

## Rules & Regulations

17 C.F.R. § 240.10b-5 ........................................................................ 6

17 C.F.R. § 275.206(4)-8...........................................................*passim*

FED. R. BANKR. P. 7015 ...................................................................... 20

FED. R. CIV. P. 7(a) ............................................................................ 20

FED. R. CIV. P. 9(b) ............................................................................ 4

FED. R. CIV. P. 15............................................................................ 20, 21

## Other Authorities

Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012))............................................................. 10-11

Finding of Fact, Black's Law Dictionary (11th ed. 2019) ................... 17

Prohibition of Fraud by Advisers to Certain Pooled Investment Vehicles, Investment Advisers Act Release No. IA-2628, 72 Fed. Reg. 44,756, 44,756–57 & nn.3–5 (Aug. 9, 2007) ....................................................... 8

# INTRODUCTION

Plaintiff/Appellant The Charitable DAF Fund, L.P. (the "<u>DAF</u>") and its wholly owned subsidiary, Plaintiff/Appellant CLO Holdco, Ltd. ("<u>Holdco</u>," and collectively, "<u>Appellants</u>") contend that the bankruptcy court (1) erred by concluding the complaint fails to state claims for breach of fiduciary duty, gross negligence, breach of contract, and tortious interference, and (2) abused its discretion in applying judicial estoppel. Defendant/Appellee Highland Capital Management, L.P. ("<u>Highland</u>") tackles none of these issues head on in its brief.[1]

Instead, Highland presents a laundry list of incorrect and immaterial arguments, the centerpiece of which is wholesale dependance on a magic-word-reliant, code-pleading-style analysis long rejected by federal courts. And Highland supports these critiques only with inapposite caselaw or citations to the conclusions of the bankruptcy court's order—*e.g.*, the same ones presently being challenged.

As Appellants demonstrate below, this is not enough to justify dismissal on the pleadings. This Court should reverse and remand the case for a decision on the merits.

---

[1] The exception is the argument for simple negligence, which Highland does address directly and, upon reflection, Appellants now concede.

# ARGUMENT

## I. Appellants State Claims Upon Which Relief Can Be Granted

### a. Breach of Fiduciary Duty

Highland offers no argument for the proposition that Appellants' complaint fails to state a claim for breach of fiduciary duty under state or federal law. It merely repeats the mantra that no such claim was expressly labeled and, therefore, was not pleaded. This is simply not so.

Appellants assert in their "First Cause of Action" a claim for "Breaches of Fiduciary Duty." ROA.289. Highland leaves unrefuted the factual allegations underpinning the claims—and specifically:

1. That Highland served as Appellants' investment advisor, purchasing agent, and attorney-in-fact under a contract governed by Texas law, ROA.289-291, ROA.5129;

2. That during this relationship, Highland engaged in a corrupt, self-dealing transaction with HarbourVest, ROA.287-288, 291-293, 296-297; and

3. That Highland misrepresented the value of a significant part of the consideration it obtained in that transaction (the HarbourVest Interests[2]) and did so to its own benefit and to the detriment of Appellants, ROA.286-288.

---

[2] Appellants continue here with the use of terms defined in their opening brief.

Instead of addressing these facts, Highland puts its eggs in the "magic words" basket. That is, Highland contends that because the complaint fails to use very specific terms—*e.g.*, "section 215" of the IAA, "Texas law," or "recission [sic]," *see, e.g.*, Red Br. at 15, 35-36—the complaint must be construed as *excluding* them. And therefore, in Highland's view, the complaint's descriptions of various breaches of fiduciary duty cannot have referenced or even given notice of any fiduciary breaches actionable under § 215 or under Texas law, or under any law that would either void the advisory contract between Appellants and their fiduciary or provide for damages for their breach.

This is nonsense, of course. The rules governing pleadings do not condone this kind of parsing. Appellants already explained the elements of a breach-of-fiduciary-duty claim and the factual allegations underpinning each element, including, most importantly, those recited above. *See also* Blue Br. at 17-20. These allegations must be construed in *Appellants'* favor. The bankruptcy court and the district court did the opposite, and Highland wrongly urges this Court to do the same.

### i. The Rule 10b-5 Claim Is a Red Herring

Highland does not lead with its "magic words" argument. Instead, it buries it in the middle of its lengthy attack. And even when it finally gets

to the subject of the complaint's first count, fiduciary duties, Highland begins with misdirection, analyzing the elements of a Rule 10b-5 claim, *see* 17 C.F.R. § 240.10b-5, a claim which Appellants do not assert. *Compare* Red Br. at 30-32, *with* Blue Br. at 27 n.9.

Highland argues that the complaint is missing the "scienter" and "proximate-cause" elements of a Rule 10b-5 claim. But this is a classic red herring. Breaches of the fiduciary duties of care and loyalty, for example, are actionable in cases of self-dealing regardless of intent or damages. *See, e.g.*, *Mullen v. Jones*, 445 B.R. 677, 713–14 (Bankr. N.D. Tex. 2011). Thus, these elements could not possibly be prerequisites to pleading a breach of fiduciary duty.

### ii. Rule 9(b) Is Inapplicable But is Nevertheless Satisfied

Springboarding off its Rule 10b-5 analysis, Highland next argues that the complaint fails to plead with particularity in compliance with Federal Rule of Civil Procedure 9(b). But it does not explain why Rule 9(b) should be applied here. Certainly, fraud is not a necessary component of a claim for breach of the fiduciary duties of care or loyalty. *See Wills v.*

*Donnelly*, 118 S.W.3d 10, 36 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("[F]raud is not required for breach of fiduciary duty.").

Moreover, each element of the fiduciary-duty claim *is* pleaded with particularity, as explained above. And further, the speaker of the false statements is identified by name and role: James Seery, Highland's CEO. ROA.281, 286. The date he made the fraudulent statements is provided. ROA.285. A transcript of his actual statements is referenced and is part of the record. *See* ROA.287; Blue Br. at 6 (citing ROA.780, 796, 808). The reason this statement was false when made is explained. ROA.286-88. Diverting and concealing the investment opportunity is alleged to be the goal. ROA.291. Rule 9(b), if it applies, requires nothing more. *Life Partners Creditors' Tr. v. Cowley (In re Life Partners Holdings, Inc.)*, 926 F.3d 103, 117 (5th Cir. 2019) (requiring, under Rule 9(b), only the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby").

### iii.   Appellants Have Pleaded a Claim Under the IAA

Turning finally to its "magic words" theory of the case, Highland argues that § 206 of the IAA does not create a private right of action and that Appellants, therefore, have not pleaded a claim under the IAA. But this argument misconstrues the pleadings. Appellants allege that the

Settlement Agreement with HarbourVest violates the IAA, including specifically § 206 and its accompanying rules (*e.g.*, 17 C.F.R. § 275.206(4)-8 ("Rule 206(4)-8).[3] ROA.291-92. Highland overlooks that the IAA, in § 215, allows Appellants to void "every contract made in violation of the [IAA] . . . or any rule, regulation or order thereunder . . . ." *See* 15 U.S.C. § 80b-15(b). Because Appellants pleaded that the Settlement Agreement violates the IAA, their right to relief under § 215 has been invoked. ROA.279-80, 289.

That § 215 provides the IAA's private enforcement mechanism, not § 206, changes nothing. *See* Blue Br. at 21-23. Placing the enforcement mechanism in § 215 does not read § 206 out of the statute, as Highland would have the Court believe. Here, the complaint alleges that a fiduciary relationship existed under the IAA and identifies the Texas-law-governed Advisory Agreement with Highland and the IAA[4] as the sources of the

---

[3] The complaint references both the IAA and "a multitude of regulations" promulgated thereunder. ROA.290-92. Although a typo resulted in an erroneous citation to the C.F.R. volume, both context and an explicit example, "17 CFR 240.10b5-1," are sufficient to provide notice of this basis for Appellants' claim.

[4] The duties described in § 206 do more than create substantive obligations enforceable under § 215. They contribute to the very definition of the investment-advisor role under state law. Akin to the statutory duties that supply the standard of care under the negligence *per se* doctrine, the duties described in § 206 set standards, create expectations, and define the nature the advisor-investor relationship. *Cf. Gupta v. E. Idaho Tumor Inst., Inc.*, 394 F.3d 347, 351 (5th Cir. 2004) (concluding that some "special duties" arising under the Texas Revised Limited Partnership Act may rise to

fiduciary duties at issue. ROA.290-92. That a particular section of the IAA is *not* mentioned by section number is of no moment. Neither Rule 9(b) nor any other authority requires a complaint to plead with particularity which section of a statute is in play. Pleading is not a game of "eight ball" in which one can win by saying, "You didn't call your pocket." Even the long-abandoned code-pleading days were not so severe.

### iv. The Claim Belongs to Both the DAF and Holdco

Highland next contends that it owed no fiduciary duties to Holdco because Holdco is not a "client" under the IAA—essentially conceding that it owed such duties to the DAF, which was its client. But this is also incorrect. And it is telling that Highland relies wholly on general authority for the proposition that investment advisors owe fiduciary duties only to their "clients." Never mind that § 206(4) never uses the term "client," whereas other sections of the IAA do.

Highland cites *Goldstein v. SEC*, 451 F.3d 873 (D.C. Cir. 2006), for

---

the level of fiduciary duties); *Laird v. Integrated Res.*, 897 F.2d 826, 829 (5th Cir. 1990) *Laird* , 897 F.2d at 836 ("Our holding does not, therefore, create a private cause of action under the [IAA]. Instead, it only requires considering the fiduciary status of investment advisers in assessing liability under [another cause of action]."); *see also* Blue Br. at 31-32 (citing cases that have recognized state-law fiduciary-duty claims predicated on violations of the fiduciary duties enumerated in the IAA).

its proposition. But *Goldstein* actually favors Appellants' position. The case addressed a rule identical to Rule 206(4)-8 promulgated under § 206(2), and explained that, because § 206(2) was on its face limited to "any client or prospective client," this provision of the rule could not be applied to nonclient investors in managed pooled investment funds. *See Goldstein*, 451 F.3d at 878. The court went on to observe, however, that the "anti-fraud provision [§ 206(4)] applies . . . to persons other than clients" and favorably cited cases in which liability under § 206(4) had been found against advisors for acts committed against non-clients. *Id.* at 881 n.6. Notably, the SEC expressly promulgated Rule 206(4)-8 under § 206(4) in response to *Goldstein*. *See* Prohibition of Fraud by Advisers to Certain Pooled Investment Vehicles, Investment Advisers Act Release No. IA-2628, 72 Fed. Reg. 44,756, 44,756–57 & nn.3–5 (Aug. 9, 2007).

Moreover, Highland makes no effort to distinguish the plain language of Rule 206(4)-8, which prohibits, for example, "any investment adviser to a pooled investment vehicle,"[5] like Highland, from making "any

_____

[5] Highland cannot deny that Holdco is an investor in such a "pooled investment vehicle." Or else it would have. *Compare* Blue Br. at 4, 24 (stating that the issue is uncontested and quoting Seery's testimony conceding as much), *with* Red Br. at 38-39 (carefully avoiding the use of the terms "pooled" and "vehicle" while making no reference whatsoever to Rule 206(4)-8)). HCLOF is a pooled investment fund because it has fewer than 100 investors and does not offer public securities. *See* 17 C.F.R. § 275.206(4)-8; *SEC v. Markusen*, 143 F. Supp. 3d 877, 891 (D. Minn. 2015) ("The Funds

untrue statement of a material fact" or omission "to any investor or prospective investor in the pooled investment vehicle." 17 C.F.R. § 275.206(4)-8. Therefore, Appellants have pleaded a claim under the IAA because they have pleaded violations of provisions the IAA and rules promulgated thereunder, which are enforceable via a private cause of action authorized by § 215.

### v.   The *NexPoint* Case Cuts Against Highland

Highland next argues that any § 215 claim is foreclosed by the Second Circuit's decision in *NexPoint Diversified Real Estate Trust v. Acis Capital Management, L.P.*, 80 F.4th 413 (2d Cir. 2023). But there, the agreement in question was an advisory agreement that all parties agreed was *not* made in violation of the IAA. *NexPoint*, 80 F.4th at 417. *NexPoint* held that § 215 only voids a contract where that contract is "made in violation" of the IAA, *or* "where the performance of the contract—that is, fulfilling the contract according to its terms—involves the violation of the IAA." 80 F.4th at 419.

Here, Appellants *have* pleaded that the Settlement Agreement was made in violation of the IAA. *See* Blue Br. at 6, 8; *see also Laird v.*

are 'pooled investment vehicles' because they have less than 100 investors and do not publicly offer their securities.").

9

*Integrated Res.*, 897 F.2d 826, 829 (5th Cir. 1990) (holding that agreements entered into by advisors violated the IAA's anti-fraud provision where advisor failed to fully disclose all critical facts related thereto). Therefore, citing *NexPoint* accomplishes little for Highland.

Appellants also pleaded that Highland violated the IAA in its *performance* of the advisory agreement. Appellants do not contend that the advisory agreement was "made in violation" of the IAA. On this issue, *NexPoint* conflicts with this Court's precedent. Section 215 reads:

> Every contract made in violation of any provision of this subchapter and every contract . . . the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of this subchapter, or any rule, regulation, or order thereunder, shall be void . . . as regards the rights of the person who in violation of any such rule, regulation, or order, shall have made or engaged in the performance of such contract . . . .

15 U.S.C. § 80b-15(b).

This language plainly provides that a contract is voided *either* because the terms themselves constitute a violation of the IAA *or* because "performance" of the contract or the "continuance of any relationship or practice" violates the IAA. Highland does not get to read the second part of the sentence out of the statute. *See Avion Funding, L.L.C. v. GFS Indus., L.L.C. (In re GFS Indus., L.L.C.)*, 99 F.4th 223, 229 (5th Cir. 2024) ("'If

possible, every word . . . of a statute is to be given effect,' and 'none should be ignored.'" (brackets omitted) (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174 (2012))).

To the extent that *NexPoint* is at odds with this reading of the statute, *NexPoint* is contradicted by *Regional Properties, Inc. v. Financial & Real Estate Consulting Co.*, 678 F.2d 552, 557–58 (5th Cir. 1982). There, this Court noted that § 29 of the Exchange Act and § 215 of the IAA are identical and, therefore, should be construed in parallel. *See id.* at 558. It rejected the construction adopted by the Second Circuit in *NexPoint* and held that the plain language of the statute rendered "voidable those contracts that are either illegal when made or as in fact performed." *See id.* at 560.[6]

Accordingly, *NexPoint* changes nothing.

### vi.   Remedies Are Available Under § 215

Highland next argues that damages are unavailable under § 215 of the IAA, as if that could somehow justify dismissal here. The remedies available under § 215 include equitable relief "incident" to a contract made

---

[6] The Second Circuit attempted to harmonize *Regional Properties* by narrowing it to the proposition that the requisite "illegality" need not be "facial" or even "ex ante" and therefore, *Regional Properties* was consistent with the standard established in *NexPoint. See NexPoint*, 80 F.4th at 421. But this cannot be squared with this Court's holding that § 29's language rendered voidable contracts that were "prohibited transactions, i.e., ones proscribed by Section 29(b)." *Reg'l Props.*, 678 F.2d at 561.

or performed in violation of the IAA being declared void. *See* 15 U.S.C. § 80b-15; *Transamerica Mortg. Advisors (TAMA) v. Lewis*, 444 U.S. 11, 19 (1979) ("[W]e conclude that when Congress declared in § 215 that certain contracts are void, it intended that the customary legal incidents of voidness would follow.").

Notably, based on the plain language of the statute and the case law, the entire contract is not void under § 215(b). Rather, it is *voidable* only "as to the rights" of the violating party. *See* 15 U.S.C. § 80b-15(b); *cf. Reg'l Props.*, 678 F.2d at 559–60 (holding that § 29's identical voidness language did not void entire agreement as to innocent parties, only as to the violating parties) (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 386–88 (1970)).

Here, the complaint seeks, among other things, "disgorgement," "specific performance," "constructive trust," "equitable relief," "injunction," and "all such other relief" to which Appellants are entitled. ROA.296-97, 302-03. Thus, the complaint asks for "the customary legal incidents of voidness" that the Supreme Court says are available under § 215. That Appellants' request for damages arises from their state-law fiduciary-duty, negligence, and contract-related claims should not alter the foregoing

analysis.

### vii. The Judicial-Estoppel Argument Does Not Reach the Fiduciary-Duty Claims

Highland also attempts to stretch its judicial-estoppel argument into the fiduciary-duty arena. But the bankruptcy court did not apply judicial estoppel to the fiduciary-duty claim. And even Highland, in making the argument, can only go so far as to claim it had the right to *compete with* Appellants in acquiring the HarbourVest Interests. Nowhere does it argue it had the right to *lie to* Appellants—as the complaint says Highland did— to conceal from Appellants the true value of the HarbourVest Interests.

### viii. That the Sale Occurred in the Context of the Settlement Is Immaterial

Next, Highland argues—without authority—that its acquisition of the HarbourVest Interests should not be viewed as a "sale" or an "opportunity" and therefore cannot amount to a violation of fiduciary duty. Instead, it contends, the transfer of the HarbourVest Interests was more like a rescission of the previous purchase of those interests. But this is just more nonsense.

The acquisition of the HarbourVest Interests for consideration certainly was an opportunity that could have been offered to the Appellants. ROA.294. And the fact that Highland breached its fiduciary

duty to Appellants and committed self-dealing not only so it could obtain a valuable asset, but also to escape its liability on the cheap, is *worse*, not better.

Furthermore, Highland's contention that the settlement was essentially a rescission ignores the reality that HarbourVest acquired those interests from Appellants in the first place. ROA.283. Highland did not sell HarbourVest its interests in HCLOF—Holdco did, *on advice from its then-advisor, Highland.* ROA.282-283. Highland cannot "rescind" a contract they were not a party to. *Weingarten Realty Invs. v. Miller*, No. 11-CV-2522, 2012 U.S. Dist. LEXIS 99958, at *4 (S.D. Tex. July 18, 2012). If the original HarbourVest transaction had been rescinded, then Appellants would have received the HarbourVest Interests back in exchange for the $22 million purchase price (which is precisely what Appellants have pleaded for).

In short, each argument Highland lodges misses the mark. The complaint states a claim for breach of fiduciary duty; concluding otherwise was error.

### b.    Gross Negligence

Highland's argument against Appellants' gross-negligence claim reintroduces its "magic words" theory, relying on the complaint's omission

of the term "gross." But that alone does not help Highland's cause. There are no magic words in federal pleading. *See* Blue Br. at 15-17; *Boudreaux v. La. State Bar Ass'n*, 3 F.4th 748, 756 (5th Cir. 2021) ("[P]leading standards don't demand . . . any magic words.").

And rather than deal with Appellants' contention that they cannot be defaulted out on a Rule 12(b)(6) motion over a briefing deficiency, Blue Br. at 44 (citing *Servicios Azucareros de Venez., C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012)), Highland relies on inapposite authority that does not even involve Rule 12(b)(6), *see* Red Br. at 49 (citing *Gilchrist v. Westcott (In re Gilchrist)*, 891 F.2d 559, 560 (5th Cir. 1990), concerning a motion for reconsideration; and *Moody v. Empire Life Ins. Co. (In re Moody)*, 849 F.2d 902, 904 (5th Cir. 1988), concerning a summary-judgment motion). Thus, Appellants' argument is unrefuted.

Similarly, Highland offers *no* argument or explanation concerning the insufficiency of the facts actually pleaded. It just says, "the required factual . . . elements are [not] in the [c]omplaint." Red Br. at 50. Appellants respectfully disagree. The complaint describes reckless conduct, which is sufficient. *See* Blue Br. at 42-43.

Further, Highland is wrong about the chronology of the bankruptcy court's exculpation. The final plan did not become effective, and

exculpation of Highland did not occur, until August 11, 2021, well after Appellants filed the Complaint. *See* Blue Br. at 10; *see also Nexpoint Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 48 F.4th 419, 427 (5th Cir. 2022) (identifying three years after the effective date of Highland's final bankruptcy plan as August 2024). And if there were deficiencies, then Appellants should have been afforded an opportunity to amend given that the exculpation came after the complaint was filed.

### c. Judicial Estoppel

Highland's judicial-estoppel argument also misstates both law and fact. With regard to the law, Highland erroneously describes the inadvertence element. A party's position taking is inadvertent—and judicial estoppel is therefore inapplicable—when the party "either lacks knowledge of the undisclosed claims *or* has no motive for their concealment." *Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 335 (5th Cir. 2004) (emphasis in original) (citation omitted). Highland gets this backwards, erroneously arguing that knowledge of the claims *or* motive for their concealment means judicial estoppel *is* applicable. Red Br. at 27. *But see CSX Transp., Inc. v. Ala. Dep't of Revenue*, 888 F.3d 1163, 1177 (11th Cir. 2018)

(explaining the logical fallacy of mistaken reversal). Absent a motive to conceal, judicial estoppel is inapplicable.

With regard to the facts, Highland waves off Appellants' allegations that they were unaware of the true value of the HarbourVest Interests because Highland concealed that information from them. ROA.287-289. Instead, Highland posits its unsupported conclusion that Appellants "knew all the facts." Red Br. at 24. There is no allegation (much less record evidence) supporting this supposition. *See D.A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 457 (5th Cir. 2010) ("[A]rguments by counsel are not evidence."). More to the point, Highland denies *none* of the facts Appellants identify as supporting inadvertence. *See* Blue Br. at 47-48.

Highland also argues wrongly that Appellants previously failed to make these arguments.[7] Regardless, in light of the lack of record evidence

---

[7] Appellants did not raise a new argument on appeal regarding the standard for judicial estoppel. Appellants argued that to the extent the test under *Coastal Plains* applies to a 9019 hearing (which the bankruptcy court itself questioned), the inadvertence element was applied incorrectly. *See* Blue Br. at 46-48. Appellants challenged the motive "finding" before the district court. *See* Blue Br. at 46-47. And Appellants have consistently maintained that the bankruptcy court did not make factual findings as to motive, but instead engaged only in "a discussion of hypotheticals and conjecture, not evidence." Blue Br. at 46 (citing ROA.40-41); *see Finding of Fact*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A determination by a judge . . . of a fact supported by the evidence in the record." (emphasis added)).

supporting the bankruptcy court's motive determination, the judicial-estoppel finding is unsustainable.

### d.    Contract-Related Claims

Highland's contract-related arguments are contrary to law and fact. With regard to the facts, the complaint alleges that HarbourVest "offered" and sold its interests to Highland, not the then-unnamed affiliate of Highland's later choosing. ROA.296. Highland's conclusory assertion—that its exercise of control over the interests never amounted to a transfer under the terms of the Members Agreement—is factually unsupported.

The assertion is also contrary to law. *See* Blue Br. at 50 (citing *Oxford Cap. Corp. v. United States*, 211 F.3d 280, 284 (5th Cir. 2000), which Highland does not address or distinguish in its brief). Highland does not say otherwise. It merely complains that the argument is new—it is not. And in any event, a "new argument[] relating to [a] preserved claim[] . . . may be reviewed on appeal." *Pugliese v. Pukka Dev., Inc.*, 550 F.3d 1299, 1304 n.3 (11th Cir. 2008); *see Sec'y, U.S. Dep't of Lab. v. Preston*, 873 F.3d 877, 883 n.5 (11th Cir. 2017) ("Parties can most assuredly waive positions and issues on appeal, but not individual arguments—let alone authorities. Offering a new argument or case citation in support of a position advanced

in the district court is permissible—and often advisable." (citation omitted)).

Highland also argues, oddly, that the contract claim fails because the complaint does not request damages, what Highland claims is the proper remedy. But the complaint does plead damages. ROA.297, 303. And even so, failing to plead the proper remedy is not fatal anyway, as Appellants have previously explained. *See* Blue Br. at 24-25.

As for the tortious-interference claim, Highland contends that a party cannot interfere with its own contract. This makes sense in the context of a two-party contract or with regard to interference concerning a party's own obligations. But a party may interfere with a co-party's contractual obligations in an actionable manner, as the complaint alleges happened here. ROA.302-03. Highland or HarbourVest—one or the other—should have honored Appellants' contractual right of first refusal. And Highland is liable, alternatively, either for breaching the contract or for inducing HarbourVest's breach.

## II.   Appellants Should Have an Opportunity to Amend

Appellants reiterate that the complaint was dismissed—*twice*—without a single opportunity to amend. Highland contends that leave to amend was appropriately denied. First, it contends that Federal Rule of

Civil Procedure 15 and its liberal-amendment provisions do not even apply. Second, it argues that any amendment would be futile. No authority supports either argument.

As to the applicability of Rule 15, Highland merely points to this Court's recent opinion in *CLO Holdco, Ltd. v. Kirschner*, 102 F.4th 286 (5th Cir. 2024), arguing that the Bankruptcy Code supplants Rule 15 here. But neither that opinion—nor any other authority Appellants can find—says that Rule 15 can be disregarded or is inapplicable to a complaint filed in federal court. As well it could not. Bankruptcy Rule 7015 incorporates Rule 15 in adversary proceedings. The plain language of Rule 15 applies its liberal pleading standard to "all other cases," meaning all except those covered by the "matter of course" standard of subsection (a)(1).

And further, the attempt to stretch the holding in *Kirschner* to reach this case is ill-conceived. In that case, this Court merely observed that a bankruptcy court may evaluate a post-confirmation amendment to a withdrawn proof of claim under a holistic, equitable approach rather than via the rigid formula advocated by the appellant. *See Kirschner*, 102 F.4th at 291. That Rule 7015/Rule 15 does not apply to a withdrawn proof of claim is hardly applicable here—a proof of claim is not a "pleading" as defined under Federal Rule of Civil Procedure 7(a). *See id.* at 289–90.

Therefore, Rule 15's standard for amending a "pleading" could not possibly have been at issue. No party argued that it was. And the opinion does not even mention the rule. Highland asks far too much of this precedent.

Highland's futility argument is even more specious. Having already argued that the complaint was correctly dismissed for failing to explicitly identify "section 215" of the IAA or "Texas law" as the source of its fiduciary-duty count, it insists that Appellants must be prevented from amending to plead such technical specifics. *See* Red Br. at 51-52. Likewise, having relied on exculpation provisions in the final bankruptcy plan that were not even effective until months after the complaint was filed, Blue Br. at 10, Highland insists that Appellants be prevented from explicitly pleading the higher standard, gross negligence, that those provisions would require. These specious arguments have nothing to do with the futility doctrine. They are little more than a bald attempt to revert to the "gotcha" rules of pleading that were unequivocally rejected by the adoption of the Federal Rules. *See Foman v. Davis*, 371 U.S. 178, 181 (1962) ("It is too late in the day and entirely contrary to the spirit of the Federal Rules

of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities.").

## CONCLUSION

For these reasons and those stated in Appellants' opening brief, the Court should reverse the judgment and remand to the district court for further proceedings, including, but not limited to, renewed consideration of Appellants' motion to withdraw the reference.

Respectfully submitted,

*/s/ Mazin A. Sbaiti*
Mazin A. Sbaiti
Jonathan Bridges
Griffin S. Rubin
SBAITI & COMPANY PLLC
Dallas Arts Tower
2200 Ross Avenue, Suite 4900W
Dallas, Texas 75201
(214) 432-2899
mas@sbaitilaw.com

*Counsel for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United Court of Appeals for the Fifth Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Mazin A. Sbaiti*
Mazin A. Sbaiti

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 4,687 words excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Date:  February 12, 2025          */s/ Mazin A. Sbaiti*          
Mazin A. Sbaiti